UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRIAN FERRAIOLI,<br>*Defendant*. | No. 3:18-cr-00027 (JAM) |

**ORDER DENYING MOTION FOR SENTENCE REDUCTION**

Brian Ferraioli is a prisoner of the Federal Bureau of Prisons ("BOP"). In light of the rapidly spreading coronavirus ("COVID-19"), he moves under 18 U.S.C. § 3582(c)(1)(A) for a reduction of his sentence of imprisonment to allow for his release. I will deny the motion.

**BACKGROUND**

On May 7, 2018, I sentenced Ferraioli principally to a term of six years of imprisonment following his guilty plea to a charge of conspiracy to commit mail and wire fraud, along with an order for restitution of $6,896,927 for his numerous victims.[1] He began serving his sentence two years ago in July 2018, and he is scheduled to complete his term of imprisonment about 25 months from now in September 2022.

Ferraioli is 43 years old. He states that his medical history includes thrombosis and slightly above average levels of mean corpuscular hemoglobin. His BOP medical records, however, do not reflect that he is currently suffering—or has even recently suffered from—these conditions. Ferraioli also states that he has a lump in his chest that has gone untreated by the

---

[1] On the same day I also imposed concurrent sentences of six years of imprisonment on a separate charge of conspiracy to commit mail and wire fraud and five years of imprisonment on a separate charge of tax evasion. *See United States v. Brian Ferrarioli*, No. 17cr177-JAM (D. Conn.). Ferraioli has not filed a motion for sentence reduction on the docket in this separate criminal case but the reasons stated in this ruling are equally applicable to the separate case.

1

BOP. But Ferraioli's BOP medical records indicate that after he reported "[s]harp pain below right breast x 3 days," a radiology report from a scan performed in December 2018 did not indicate any abnormal results. Doc. #35 at 237. Nor does Ferraioli does describe how this condition makes him more vulnerable to COVID-19.

Ferraioli is serving his sentence at the low security correctional institution at FCI Petersburg Low in Virginia. According to the BOP's website, FCI Petersburg Low has about 934 inmates, which includes 193 inmates at the adjacent minimum security camp.[2] The BOP states that FCI Petersburg Low has not had any positive cases to date and that, notwithstanding one staff member who has recovered, no inmates have tested positive for COVID-19. Doc. #39 at 11.[3] The BOP has instituted extensive procedures to reduce any likelihood of an outbreak of COVID-19 at FCI Petersburg Low. *See id*. at 12.

Ferraioli has filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), along with a supplemental memorandum in support. Docs. #31, #32. The Government has filed an opposition memorandum. Doc. #39. The parties do not dispute that Ferraioli has properly exhausted the administrative procedures required before the filing of his motion for release.

## DISCUSSION

I will first review the statutory and regulatory framework that governs motions under 18 U.S.C. § 3582(c)(1)(A). Then I will address how these factors apply to this case.

### *Statutory and regulatory framework*

Federal law allows a court to grant a "compassionate release" motion to reduce a federal prisoner's sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).

---

[2] *See* Federal Bureau of Prisons, FCI Petersburg Low, available at https://www.bop.gov/locations/institutions/pet/ (last accessed July 27, 2020) [https://perma.cc/RJ2N-4UP9].
[3] Federal Bureau of Prisons, COVID-19 Coronavirus, COVID-19 Inmate Test Information, available at https://www.bop.gov/coronavirus (last accessed July 27, 2020) [https://perma.cc/9KGW-RXR4].

Previously it was only the BOP that could file this kind of motion, but amidst widespread complaints about the failure of the BOP to file motions on prisoners' behalf, Congress amended the law with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), to allow prisoners the right to file their own motions for a sentence reduction if they first exhaust the statute's procedures for initially making a request to the warden to file a motion on their behalf. *See United States v. Hill*, 2020 WL 2542725, at *1 (D. Conn. 2020).

Provided that a prisoner has satisfied the statute's exhaustion requirement, section 3582(c)(1)(A) establishes several criteria for a court to consider when deciding whether to grant the motion for a sentence reduction. First of all, there has to be no less than "extraordinary and compelling reasons" to warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).[4] The statute does not further define this term but it instructs courts to consider whether a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Ibid.* Congress has separately directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," while also advising that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

In accordance with this instruction from Congress, the Sentencing Commission has issued a policy statement in the U.S. Sentencing Guidelines that sets forth criteria for what constitute "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13 cmt. n.1 (2018).

---

[4] As an alternative to the existence of such "extraordinary and compelling reasons," section 3582(c)(1)(A) allows for motions to be filed by the BOP on behalf of prisoners who are at least 70 years old and have served at least 30 years in prison. 18 U.S.C. § 3582(c)(1)(A)(ii). This alternative is not at issue in this case.

The commentary provides, for example, that "extraordinary and compelling reasons" exist if the defendant "is suffering from a terminal illness" or if the defendant otherwise has a serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Ibid.* cmt. n.1(A). The commentary further provides for a catch-all "Other Reasons" that "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Ibid.* cmt. n.1(D).

As numerous courts have recognized, the Sentencing Guidelines have not yet been revised to bring them into conformity with the First Step Act's authorization for defendants to bring their own motions after exhausting administrative procedures. Therefore, to the extent that the Guidelines commentary purports to vest authority solely with the BOP to make a determination of "Other Reasons," this delegation is no longer exclusive; courts also have independent authority to decide whether there are "Other Reasons" that amount to "extraordinary and compelling reasons" to grant a motion for sentence reduction. *See Hill*, 2020 WL 2542725, at *1 (citing cases).

Beyond a court's determination as to whether there exists "extraordinary and compelling reasons" for a sentence reduction, a court must also "consider[] the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Therefore, a court must examine the same factors it did when it initially sentenced the defendant, including the nature and circumstances of the crime, the defendant's history and characteristics, and the multiple purposes of sentencing, such as providing just punishment, deterring crime, protecting the public from further crimes by the defendant, and providing the defendant with

4

rehabilitation. *See* 18 U.S.C. § 3553(a). In addition, a court must determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

### *Factors applying to Ferraioli*

I first address whether Ferraioli has shown "extraordinary and compelling" reasons that could warrant a sentence reduction. There is no doubt that the COVID-19 pandemic is extraordinary, having killed more than one hundred thousand people in the United States in recent months. But Ferraioli fails to show that he is at appreciable risk of contracting COVID-19, much less that he is particularly vulnerable to the virus's most lethal effects.

Although Ferraioli states that his blood clots place him at increased risk of serious illness if he contracted COVID-19, thrombosis is not included in his list of current health problems in BOP records, Doc. #35 at 4, nor is it even listed as a health condition in remission, *id.* at 5. Ferraioli's medical records from 2016 indicate that he had "occlusive thrombus in the left greater saphenous vein," but that he had no "demonstrated deep venous thrombosis bilaterally." *Id.* at 232-33.[5]

On July 17, 2020, the Centers for Disease Control and Prevention ("CDC") recently revised its list of risk factors for COVID-19. The revised guidance clarifies that "[p]eople of any age with certain underlying medical conditions are at increased risk for severe illness from COVID-19," but thrombosis is not included in the CDC's list.[6]

---

[5] Ferraioli's community medical records indicate similar findings. *See, e.g.*, Doc. #34 at 22-23 (2017 records noting that patient reported a history of deep vein thrombosis, but concluding "[b]ilateral lower extremity venous duplex performed on 3/17/2017 shows no evidence of deep vein thrombosis."); *id*. at 5-8 (2015 records with a diagnosis of "Thrombophlebitis leg superficial" but noting patient history of "bilateral DVTs approximately 8-9 months ago"); *id*. at 2 (2014 radiology report noting that "[n]o findings of acute or chronic DVT throughout the visualized right lower extremity deep venous system").
[6] *See* Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), "People of Any Age with Underlying Medical Conditions," last updated July 17, 2020, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

5

Furthermore, there have been no reported cases of COVID-19 at FCI Petersburg Low. By way of contrast, the hamlet of Blue Point, which is where Ferraioli seeks to be released, is located in Suffolk County, New York, which has had more than 42,000 confirmed cases of COVID-19 and more than 2,000 deaths as of July 25, 2020.[7] All in all, Ferraioli has not shown that the risk he faces from COVID-19 while imprisoned at FCI Petersburg Low constitutes an extraordinary and compelling reason for his release from imprisonment.

Turning to the sentencing factors under 18 U.S.C. § 3553, Ferraioli played a major role in a massive fraud scheme causing millions of dollars of losses to thousands of investors. Many of his numerous victims have voiced their objection to his early release. *See* Doc. #39 at 14-16. After considering all of the sentencing factors, I conclude in light of Ferraioli's record that the purposes of sentencing—including just punishment—would not be served if he were released at this time with more than half of his sentence remaining to be served.

## CONCLUSION

For the reasons set forth above and for substantially the reasons stated in the Government's opposition memorandum, the motion of defendant Brian Ferraioli for a reduction in sentence is DENIED. Doc. #31.

It is so ordered.

Dated at New Haven this 27th day of July 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

conditions html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed July 27, 2020) [https://perma.cc/69C7-SFCB].

[7] New York State Department of Health, "NYSDOH COVID-19 Tracker: Persons tested positive by County," last updated July 26, 2020, available at https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Map?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n (last accessed July 27, 2020); New York State Department of Health, "NYSDOH COVID-19 Tracker: Fatalities," last updated July 26, 2020, available at https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Fatalities?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n (last accessed July 27, 2020).